UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Moline Machinery Ltd.,

Plaintiff,

vs. ORDER

The Pillsbury Company,

Defendant. Civ No. 00-2352 (MJD/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 21st day of December, 2001.

## I. Introduction

On October 25, 2001, the Court heard argument on the Defendant's Motion to Stay Pending Exhaustion of Administrative Remedies. At the time of the Hearing, the Plaintiff appeared by Stephanie A. Ball, Esq., and the Defendant appeared by Stephen P. Lucke, Esq. For reasons which follow, we grant the Defendant's Motion.

## II. Factual and Procedural History

On September 27, 1991, the Defendant, The Pillsbury Company ("Pillsbury"), sold one of its divisions to the Plaintiff Moline Machinery Ltd. ("Moline"). With that sale, those of Pillsbury's employees, who accepted the transfer, became Moline employees. One such employee was Andrew Horvath ("Horvath") who, at the time of the sale, was 51 years of age, and who had worked for Pillsbury for

FILED DEC 21 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

19 years. In July of 2000, Horvath retired from Moline, and began drawing a monthly retirement benefit from Pillsbury, under its Group Insurance Plan for Pillsbury General Hourly Employees ("Plan"). However, when Moline requested that Pillsbury pay retiree health benefits for Horvath, the request was denied. Along with this denial, Moline was informed of the Plan's internal review process, through which an appeal of this decision could be made to the Plan's fiduciaries. Instead of pursuing the administrative process, on October 12, 2000, Moline filed the instant suit against Pillsbury, seeking a declaration that Pillsbury must pay the retiree health benefits of Horvath, and other similarly situated employees, and that Moline be allowed to recoup the monies it had paid out for Horvath's medical expenses. Later, on August 16, 2001, Moline submitted a claim, to the Plan's fiduciaries for a review of Pillsbury's denial of Horvath's benefits.

Pillsbury now asks that we stay this action and, in support of that relief, it contends that its Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), Title 29 U.S.C. § 1001 et seq., which provides for the exhaustion of administrative remedies prior to a resort to the Courts. Pillsbury maintains that the Plan's fiduciaries should review the claim in the first instance, and that, therefore, this case should be stayed pending the outcome of that review. Pillsbury reports that, at the

latest, the administrative review process should be completed by March of 2002[1] -- a date which falls after deadline of February 1, 2002, for dispositive Motions and, therefore, Pillsbury urges that a stay is warranted. For its part, Moline opposes a stay, and argues that the resolution of this case requires a construction of the language of the Purchase Agreement, which covers the sale of Pillsbury's division, to Moline ("The Purchase Agreement"), and not the Plan itself and, therefore, ERISA is inapplicable, and exhaustion is not required. Alternatively, Moline asks that we find exhaustion to be futile, and that we waive its requirements.

At the close of the Hearing on October 25, 2001, we instructed the parties to supplement the Record, by providing, or by identifying, those provisions of the Plan under which Horvath's eligibility was determined, and to submit documents concerning another, similarly situated Moline employee, whose retiree health benefits were also denied by Pillsbury. We also granted leave for the parties to file supplemental briefs on these two issues, if warranted. After reviewing the initial submissions, the arguments made at the

---

[1]The claim was filed on August 16, 2001, and the Plan Administrator then has 90 days, or until November 14, 2002, to decide that claim. Moline would then have sixty days to file its appeal of any adverse decision, and the Appeals Review Committee would have 60 days to decide that appeal. As a consequence, the latest the administrative review would be completed is March of 2002.

Hearing, and the supplemental submissions, we grant the Defendant's Motion.

## III. Discussion

We hold an inherent power to stay the proceedings of an action before us, in order to control our docket, to conserve judicial resources, and to provide for the just determination of cases pending our review. Landis v. North American Co., 299 U.S. 248, 254-55 (1936); see also, Lunde v. Helms, 898 F.2d 1343, 1345 (8th Cir. 1990), cert. denied, 498 U.S. 897 (1990); Webb v. R. Rowland & Co., Inc., 800 F.2d 803, 808 (8th Cir. 1986); City of Bismarck v. Toltz, King, Duvall, Anderson and Associates, Inc., 767 F.2d 429, 433 (8th Cir. 1985); Contracting Northwest, Inc. v. City of Fredericksburg, Iowa, 713 F.2d 382, 387 (8th Cir. 1983). Here, we conclude that deference to ERISA commends our grant of the requested stay.

While ERISA itself contains no exhaustion requirement, the Eighth Circuit has mandated exhaustion in those cases where the particular benefits plan requires it. Conley v. Pitney Bowes, 34 F.3d 714, 716 (8th Cir. 1994); see also Glaman v. The Prudential Ins. Co. of America, 254 F.3d 768, 770 (8th Cir. 2001), Kinkead v. Southwestern Bell Corp. Sickness & Acc. Disability Benefit Plan, 111 F.3d 67, 68 (8th Cir. 1997). Our Court of Appeals has advanced several justifications for exhaustion, explaining as follows:

> Exhaustion serves many important purposes -- giving claims administrators an opportunity to correct errors, promoting consistent treatment of claims, promoting a non-adversarial dispute resolution process, decreasing the cost and time of claims resolution, assembling a fact record that will assist the court if judicial review is necessary, and minimizing the likelihood of frivolous lawsuits.

Galman v. The Prudential Ins. Co. of America, supra at 770; see also Conley v. Pitney Bowes, 34 F.3d 714, 718 (8th Cir. 1994).

Here, there is no dispute that Pillsbury's Plan contains an exhaustion requirement, and that, should we find that the Plan controlled Pillsbury's denial, then exhaustion would be required, absent a showing that it would be futile. Burds v. Union Pacific Corp., 223 F.3d 814, 817, n.4 (8th Cir. 2000)(beneficiaries need not exhaust administrative remedies if futile); citing Glover v. St. Louis-San Francisco Ry., 393 U.S. 324, 330 (1969). Thus, in the first instance, the core issue before us is whether Horvath's eligibility for retiree health benefits turns on an interpretation of Pillsbury's Plan or, rather, on the language of the Purchase Agreement. If the Plan governs eligibility, then exhaustion would be required; while, if the Purchase Agreement, without reference to the Plan, governs eligibility, then exhaustion would prove futile.

As a focal point, the Purchase Agreement provides, in pertinent part, as follows:

> [Pillsbury] shall also be responsible for payment of retiree health benefits of Moline Em-

> ployees[2] as they may be eligible under Seller's plans for retirees, such benefit accrual shall cease on midnight of the Closing Date. In the case of Moline Employees who are eligible for benefits from both [Pillsbury's] retiree health plan and [Moline's] health plan, [Moline's] health plan shall have primary responsibility for such employee's health claims and [Pillsbury's] retiree health plan shall have secondary responsibility. At the retirement from [Moline] of a Moline Employee, [Pillsbury's] health plan shall be primary and [Moline's] health plan shall be secondary for those Moline Employees whose service with [Pillsbury] is longer than their service with [Moline].

Exhibit 1 attached to Affidavit of Matthew Klien, at page numbered 10.

Pillsbury argues that Moline's claim is based on a dispute over the meaning of the word "retirees," as that term is employed in the phrase "as they may be eligible under Seller's plans for retirees," and that the resolution of that dispute requires that an interpretation of the Plan be made. Pillsbury further argues that, under the Plan, those persons who, at the time of the Closing, had not yet reached the age of 55, were not "retirees" and, as such, were ineligible for retiree medical benefits. See Defendant's Supplemental Letter to the Court, at 3.

[2]The Purchase Agreement defined "Moline Employees" to be those employees who had joined Moline, from Pillsbury, by virtue of the sale of the division. Exhibit 1 attached to Affidavit of Matthew Klien, at page 10. For convenience, we will employ that use of the phrase here.

Moline counters that, in rejecting its claim, on Horvath's behalf, Pillsbury relied upon the language of the Purchase Agreement, and upon the language of the Plan. According to Moline, Pillsbury's assertion, that Moline Employees had to be 55 years of age at the Closing in order to be entitled to health benefits, was based on the provision of the Purchase Agreement, that "such benefit accrual shall cease on midnight on the Closing Date." Moline relates that Pillsbury construed that phrase to mean, that not only did the Moline Employees stop "accruing years in service for eligibility, but also cease[d] accruing age for the purpose of eligibility." Plaintiff's Memorandum of Law in Opposition to Motion to Stay Litigation, ("Plaintiff's Brief") at 4. Accordingly, Moline argues that, in order to resolve this case, we need only decide which interpretation is correct, that advanced by Pillsbury, or Moline's construction -- namely, that the Purchase Agreement required Pillsbury to pay retiree medical benefits to all Moline Employees who "had ten or more years of service with Pillsbury as of the closing date and [whose] years of service at Pillsbury exceeded their years of service with Moline." Id.

Following our close review, we are persuaded that Pillsbury's decision, that Horvath was ineligible for Pillsbury-paid health benefits, was based on the fact that, at the time of the Closing, he was only entitled to deferred vested benefits. Plainly, that

was a determination that was predicated on the terms of the Plan, since it was rendered after comparing Horvath's age, and years of service, to the requisites for benefits under the various categories of potential beneficiaries.[3] Nonetheless, the question remains whether Pillsbury's decision, to consider Horvath's eligibility based on his status at the time of the Closing, was required under the Plan, or was it, as Moline contends, based upon Pillsbury's construction of the benefit accrual language in the Purchase Agreement.

In denying benefits to Horvath, it appears that Pillsbury treated Moline Employees as having left Pillsbury as of the Closing date, but the basis for that treatment remains unclear. It may be the product of Pillsbury's interpretation of the Purchase Agreement's benefit accrual language -- as Moline suggests -- or it may be a common sense understanding that, at the time of the Closing, the Pillsbury employees were transferred to Moline's employ, so as

[3]The Plan provides for "normal retirement" benefits if a person retires "after reaching age 65;" "early retirement" benefits if they retire after the age of 55, with "at least ten years of continuous service;" and "deferred vested retirement" benefits, which start any time after the person has reached age 55, if the person applies for such benefits, does not qualify for normal, or early, retirement, and has left Pillsbury "after completing five years of continuous service." Exhibit C attached to Supplemental Affidavit of Stephanie A. Ball, at 34. As those provisions apply here, Horvath was 51 years of age, and had 19 years of experience with Pillsbury, at the Closing and, therefore, he only qualified for deferred vested retirement benefits.

to require an eligibility determination based upon their status on the Closing Date. The deposition testimony of the Pillsbury officials persuades us that the initial decision, to deny Horvath's request for retiree health benefits -- whether right, or wrong, we do not here decide -- was based upon the Plan's language.

Moline disagrees, and argues that the Pillsbury officials have testified that their denial was based upon the language of the Purchase Agreement, and Moline particularly relies upon the deposition testimony of Jeanne Denz ("Denz"), and Doreen Eklund ("Eklund"), to support its contention, that "Pillsbury's refusal to pay Mr. Horvath's benefits is based upon an interpretation of the purchase agreement which is not supported by the language of the benefits condition of the purchase agreement." Plaintiff's Brief, at 5. Upon our review of the noted testimony, however, we are unable to accept Moline's characterization of that testimony.

In her deposition, Denz explained how, under the language of the Plan, a person who leaves Pillsbury, before the age of 55, can only be eligible for a deferred vested retirement benefit, and how that same person -- because he left Pillsbury, and did not retire from Pillsbury -- is not classified as a retiree for the purpose of considering him eligible for a retiree health benefit. See Exhibit A attached to the Affidavit of Stephanie A. Ball, at 21-23, 28-30, 32-39. While Denz did testify that, prior to a conversation with

a Moline employee concerning the topic of retiree health benefits, she had reviewed the Purchase Agreement, and that she interpreted that Agreement as requiring a Moline Employee to have reached the required eligibility for such benefits by the Closing Date, she never testified to having relied upon that Agreement in making her decision as to Horvath's eligibility. Id. at 67-69. Rather, Denz's testimony, when considered as a whole, convinces us that her decision, that Horvath was ineligible for retiree health benefits, was drawn from the Plan provisions.

With respect to Eklund, it is true that she could identify no express language, in the Plan, which expressly provided that a person eligible for a deferred vested benefit would be ineligible for a retiree health benefit, but she did clearly testify that she had denied the request, as to Horvath, on the basis of the Plan. Indeed, Moline admits that Eklund's decision, that Horvath was ineligible for retiree health benefits, was based upon "past practice," and that it was not until after that decision was made, that Eklund, at Moline's request, reviewed the Purchase Agreement, and expressed her belief that its provisions required the same result. Plaintiff's Brief at 5, see also Exhibit C attached to Affidavit of Stephanie A. Ball, at 44-50.

As a consequence, we are unable to accede to Moline's assertion, that Pillsbury relied upon the Purchase Agreement in initi-

ally denying retiree health benefits to Horvath. Rather, the Record supports a finding that the initial basis for that denial was the language of the Plan, and that any subsequent review of the Purchase Agreement, which was performed at Moline's request, only served to confirm, in the deponents' mind, that initial decision. We are not aware of any governing principle of law, which would transform a denial of benefits, on the basis of Plan language, into a non-Plan language denial, simply because the unsuccessful applicant for those benefits had requested the Plan administrators to review a non-Plan document as a basis for reconsideration. Notably, Moline does not draw any such authority to our attention. Therefore, we find that Pillsbury did rely upon the Plan language, and not the Purchase Agreement, in denying benefits to Horvath, and that, therefore, ERISA's exhaustion requirements necessarily apply.

Notably, even if we were to accept Moline's contention, that the denial of benefits was premised upon the language of the Purchase Agreement, we would still face the prospect that an interpretation of the Plan would be required, at some subsequent point in our analysis, in reviewing whatever may be Pillsbury's ultimate decision to grant, or deny, benefits to Horvath. If, as urged by Moline, the Purchase Agreement requires Pillsbury to pay retiree health benefits to Horvath, and those similarly situated, without reference to the Plan provisions, then, quite obviously, we would

be spared a parsing of the Plan documents. On the other hand, if we ultimately interpret the Purchase Agreement to require Pillsbury to pay retiree health benefits only to those employees who were, at the time of the Closing, already eligible for such benefits, then our resort to the Plan language would be unavoidable. We are mindful of Moline's argument, that Pillsbury can find no support for its denial based upon the provisions of the Plan, but that merely highlights the need to allow Pillsbury a final judgment as to the Plan language it administers. If, as Moline contends, Pillsbury must manufacture language not presently in the Plan, or must seek to override a separate provision of the Purchase Agreement, with a whimsical construction of the Plan, we are not powerless to act. At this point, however, Pillsbury has not been afforded the opportunity to render its final judgment on Horvath's entitlement to benefits, and ERISA confers that opportunity on Pillsbury, absent a showing of futility.

Given the foregoing, we conclude that the salutary purposes served by exhaustion, in "giving claims administrators an opportunity to correct errors, promoting consistent treatment of claims, providing non-adversarial dispute resolution process, decreasing cost and time of claims resolution, assembling a fact record that will assist the court if judicial review is necessary, and minimizing the likelihood of frivolous lawsuits," all would be here ad-

vanced in granting a stay. The fiduciaries of the Plan have not yet been afforded the opportunity to reach a full and final resolve of Horvath's claim, or of any similarly situated claim, and they should be accorded that opportunity.[4] Our decision does little more than extend to Pillsbury an occasion to review Horvath's entitlement to benefits on a principled basis, and without economic regard to the result that is finally reached. We understand that Horvath's health benefits are currently being remitted by Moline and, should Pillsbury ultimately accept responsibility for those benefit payments, we have no reason to believe that Moline would not be fully reimbursed for the advancements it has made on Horvath's behalf.

Perhaps with the perspective of a pessimist, Moline is unconvinced that a stay will produce anything but delay for delay's own sake. First, Moline urges that any administrative remedy would be inadequate, as it seeks a declaration that Pillsbury is obligated to pay the benefits of not only Horvath, but of all similarly situ-

[4]At the Hearing, we learned of another Moline employee, Gerald Kalash, whose request for retiree medical benefits from Pillsbury had been denied on the same grounds as Horvath's. However, Kalash's benefits request was denied by Pillsbury's retirement department, and has not been filed, as a claim, with the Plan Administrator, which is the first step of the administrative review process that is conducted by the Plan's fiduciaries. As a result, at this time, no claim has been fully and finally determined by the Plan's fiduciaries.

ated Moline Employees. As argued by Moline, even if the administrative review determines that Horvath is entitled to retiree health benefits, we will be obliged to construe the terms of the Purchase Agreement in order to render the declaration Moline requests. See Plaintiff's Brief, at 11. We find this argument unavailing, however. Once the Plan's fiduciaries have construed its provisions, in the context of Horvath's claim, that construction should apply to all of those who are similarly situated, absent some other consideration that has not been drawn to our attention. The Plan fiduciaries are not empowered to treat identical claims differently, or else they fail in their fiduciary obligations. While we are not positioned to now determine the matter, at least at first blush, any determination at to Horvath, will have application to all similarly situated applications for the same benefits. Conversely, if the Plan's fiduciaries administratively determine that Horvath is ineligible for retiree health benefits, Moline will, nonetheless, be entitled to an adjudication of the claims it has raised in its Complaint. Therefore, we find no merit to Moline's contention, that exhaustion would deprive it of an adequate legal remedy.

Next, Moline asserts that, even if exhaustion is required, its allowance would be futile. "The standard for adjudging the futility of resorting to the administrative remedies provided by a plan

is whether a clear and positive indication of futility can be made." Fallick v. Nationwide Insurance Co., 162 F.3d 410, 419 (6th Cir. 1998); see also Davis v. Featherstone, 97 F.3d 734, 737 (4th Cir. 1996); Lindemann v. Mobil Oil Corp., 79 F.3d 647, 650 (7th Cir. 1996); Makar v. Health Care Corp of Mid-Adlantic (Carefirst), 872 F.2d 80 (4th Cir. 1989); Fizer v. Safeway Stores, Inc., 586 F.2d 182 (10th Cir. 1978). A plaintiff must show that "it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision." Lindemann v. Mobil Oil Corp., supra at 650; see Communications Workers of Amer. v. AT & T, 40 F.3d 426 (D.C. Cir. 1994)("The futility exception is * * * quite restricted and has been applied only when resort to administrative remedies is clearly useless.")

According to Moline, "it is clear that Pillsbury will not alter its methodology in determining whether Moline Employees are eligible for benefits," because it has "maintained the same position regarding Mr. Horvath's ineligibility for benefits from the time it first evaluated the claim," until the present. Plaintiff's Brief, at 7-8. Moline contends that Pillsbury will merely review the claims so as to determine whether the Moline Employee was 55 years of age at the Closing and, if not, it will deny the claimed benefits. Id. at 9. To illustrate the point, Moline cites the recent denial of Kalash's request for retiree health benefits but,

as we have noted, Kalash's claim has not yet been submitted into the administrative review process, let alone has it been subject to an exhaustion of that process.

We find no clear showing of futility here. While it is true that Pillsbury's retirement department has consistently denied the payment of these benefits, based upon its reading of the Plan, the Plan's fiduciaries have not yet had an opportunity to fully review Moline's claim, on Horvath's behalf, and render its final administrative ruling. Moline has provided us with no evidence, apart from its suspicions, that the result, which would be produced by exhaustion, will be no different than that presently reached. If suspicions, without more, were sufficient to evade exhaustion, then the exhaustion doctrine would seldom be availing. Quite simply, Moline has failed to show that "it is certain that [its] claim will be denied on appeal," Lindemann v Mobil Oil Corp., supra at 650, or that "resort to administrative remedies is clearly useless." Communications Workers of America v. AT&T, supra at 426.

Of course, Courts have waived exhaustion, based on the doctrine of futility, in cases where the administrative process itself was discriminatory, Glover v. St. Louis-San Francisco Ry., supra, or where the plan's fiduciary refused "to respond to a claimant's request for review of a benefit eligibility or fail[ed] to issue a decision on administrative appeal within the time prescribed."

Theil v. United Health Care of the Midlands, Inc., 2001 WL 574637 *3 (D. Neb. Jan 23, 2001), but no such showing has been advanced here. Rather, Moline's assertion that exhaustion would be futile is analogous to an argument that the Plan's fiduciaries are "incapable of conducting an unbiased review of an earlier decision," an argument the Courts have previously rejected as undermining exhaustion's purpose of "avoiding disruption of a cohesive administrative scheme." Two Rivers Psychiatric Hospital v. Blue Cross and Blue Shield of Michigan, 881 F.Supp. 1109, 1111-1112 (E.D. Mo. 1998), citing International Business Machines Corp. v. Michigan, 255 N.W.2d 702 (Mich.App. 1077). Therefore, we have no competent basis to conclude that allowing the Plan's fiduciaries a full opportunity to review, and finally resolve the claim on behalf of Horvath, will be a futile exercise.[5]

---

[5]Moline also expresses the concern that, if we allow an exhaustion as to Horvath's claim, we will be affording Pillsbury the opportunity to interpret the Purchase Agreement under the guise of interpreting the Plan, so as to extend a deferential reading on subsequent judicial review. Moline, however, has presented the Plan's fiduciaries with some 4,000 pages of documents, many of which pertain to the Purchase Agreement, and the Plan's fiduciaries, most likely, will review those documents in relationship to Horvath's claim. We are not prescient, and cannot forecast how, or if, the Plan fiduciaries will attempt to interpret the terms of the Purchase Agreement, nor have we fully explored whether any purported attempt, by those fiduciaries, to interpret non-Plan documents, will have deferential results. We merely observe that we seriously doubt that allowing a stay will advance any interest of the Plan fiduciaries to obtain a deferential review not other-
(continued...)

Frankly, we think the Plan fiduciaries would ill-serve the purposes of either the Plan, or of their obligations under ERISA, if the stay they seek is for no more salient purpose than the incurrence, by all concerned, of additional costs and expense, in order to allow those fiduciaries to finally express a judgment that they have already reached. The fact that they awaited this fairly late date to request the opportunity to exhaust their administrative duties, after considerable discovery has been completed, may suggest a stratagem of gamesmanship, but counsel for Pillsbury has assured the Court that Pillsbury, and the Plan Administrators, are serious in their effort to administratively resolve the present ERISA claims on a principled and responsible basis. Only time will tell.

In granting Pillsbury's Motion to Stay this litigation until the administrative process has been exhausted, we urge both parties to expedite that process as circumstances will allow. We anticipate that, absent an earlier administrative resolution, the Appeals Review Committee will render its final determination **by no later than March 18, 2002,** and, until further Order of the Court, this case shall be stayed until that date. The parties are directed to

(...continued)
wise provided by the governing law.

contact the Court, for the scheduling of a Pretrial Conference, if a final administrative decision is made before that date.

NOW THEREFORE, It is --

ORDERED:

That the Defendant's Motion to Stay Pending Exhaustion of Administrative Remedies [Docket No. 13] is GRANTED as more fully detailed in the text of this Order.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE