UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Moline Machinery, Ltd.,

Plaintiff,

vs. REPORT AND RECOMMENDATION

The Pillsbury Co.,

Defendant. Civ. No. 00-2352(MJD/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 14th day of February, 2003.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Plaintiff's Motion to Remand, the Plaintiff's Motion to Amend the Complaint, and the parties' cross Motions for Summary Judgment. A Hearing on the Motions was conducted on October 24, 2002, at which time, the Plaintiff appeared by Joseph J. Mihalek, Esq.; and the Defendant appeared by Stephen P. Lucke, Esq., and Matthew Klein, Esqs.

For reasons which follow, we recommend that the Plaintiff's Motion to Remand on jurisdictional grounds be granted, that the Plaintiff's request for attorneys' fees be denied, and that the

71

FEB 14 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

remaining Motions of the parties be deferred to the State Court on remand.[1]

## II. Factual and Procedural Background

On September 27, 1991, the Defendant, The Pillsbury Company ("Pillsbury"), sold one of its divisions to the Plaintiff Moline Machinery Ltd. ("Moline"). With that sale, those of Pillsbury's employees, who accepted the transfer, became Moline employees. One such employee was Andrew Horvath ("Horvath") who, at the time of the sale, was 51 years of age, and who had worked for Pillsbury for 19 years. In July of 2000, Horvath retired from Moline, and began drawing a monthly retirement benefit from Pillsbury, under its Group Insurance Plan for Pillsbury General Hourly Employees ("Plan").

---

[1]Within this District, and within this Circuit, Motions to Remand a State Court proceeding, whose removal to Federal Court has been effected, are recognized as nondispositive Motions, which are within the referral jurisdiction to this Court, as provided by Title 28 U.S.C. §636(b)(1)(A). See, First National Bank (Fulda) v. American Lenders Facilities, Inc., 2000 WL 1336655 at *1 n. 1 (D. Minn., May 23, 2000); Dyrda v. Wal-Mart Stores, Inc., 41 F. Supp.2d 943, 945 (D. Minn. 1999); Regents of the Univ. of Minnesota v. Glaxo Wellcome, Inc., 44 F. Supp.2d 998, 1001 (D. Minn. 1999); Blair v. Source One Mortg. Services Corp., 925 F. Supp. 617, 619 n. 1 (D. Minn. 1996); Banbury v. Omnitrition Intern., Inc., 818 F. Supp. 276, 279 (D. Minn. 1993); White v. State Farm Mutual Automobile Company, 153 F.R.D. 639, 642 (D. Neb. 1993). Here, however, the Motion to Remand was referred to this Court in conjunction with the parties' cross-Motions for Summary Judgment and, accordingly, we express our ruling as a Report and Recommendation.

However, when Moline requested that Pillsbury pay retiree health benefits for Horvath, the request was denied. Along with that denial, Moline was informed of the Plan's internal review process, through which an appeal of that decision could be made to the Plan's fiduciaries. Instead of pursuing the administrative process, however, in September of 2000, Moline filed this action in Minnesota District Court, seeking a declaration that Pillsbury was obligated to pay the retiree health benefits of Horvath, and other similarly situated employees, and that Moline be allowed to recoup the monies that it had previously paid for Horvath's medical expenses. Thereafter, on October 20, 2000, Pillsbury filed a Notice of Removal which transferred this action to this Court. As the basis for the removal, Pillsbury asserted that Moline's claims arose under the civil enforcement provision of the Employee Retirement Income Security Act of 1974 ("ERISA"), which completely preempted the State law claims, that had been asserted by Moline, and thereby had vested this Court with Federal question jurisdiction. See, Title 28 U.S.C. §1331. Until its Motion to Remand, Moline has not contested Pillsbury's Notice of Removal.

Later, on August 16, 2001, Moline submitted a claim, to the Plan's fiduciaries, for an administrative review of Pillsbury's denial of Horvath's benefits. Upon that submission, Pillsbury moved this Court to stay this action until Pillsbury had an oppor-

tunity to administratively address Moline's claim on Horvath's behalf. Moline opposed the Motion to Stay and, by Order dated December 21, 2001, we granted that Motion. Moline Machinery Ltd. v. The Pillsbury Co., 2001 WL 1766339 *4-5 (D. Minn., December 21, 2001). Moline took no appeal from that Order. Now that the parties have exhausted the administrative remedies available to them, the Plaintiff moves to remand the matter to Minnesota State Court, and both parties seeks Summary Judgment. Since Moline's Motion to Remand goes to our jurisdiction to here the parties respective claims, and defenses, we first consider that Motion for if, as the Plaintiff contends, we are without the requisite subject matter jurisdiction to entertain the case, then our further consideration of the matter is precluded. While we have considered some loosely associated issues, in the context of our Order granting a Stay, this is the first occasion that we have had to directly address the jurisdictional issue.

## III. Discussion

As noted, the Plaintiff seeks a remand on jurisdictional grounds, and an award of attorney's fees pursuant to Title 28 U.S.C. §1447(c). This case was removed under Title 28 U.S.C. §1441 (a), which allows a defendant to remove a case from State Court if the action could have originally been brought in Federal Court. As noted, the Plaintiff claims that we are without subject matter

jurisdiction and, therefore, that the case must be returned to the State Court. In turn, the Defendant argues that, even though the Plaintiff did not originally plead a Federal cause of action, its claims are preempted by Federal law and, therefore, a Federal question is presented, and we are jurisdictionally positioned to rule on all of the pending Motions.

A. Standard of Review. A case will be remanded to State Court "'[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction* * *.'" Blaylock v. Hynes, 104 F. Supp.2d 1184, 1186 (D. Minn. 2000), quoting Title 28 U.S.C. §1447(c). "'Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant'" and, "[a]bsent diversity of citizenship, federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Magee v. Exxon Corp., 135 F.3d 599, 601 (8th Cir. 1998), quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987); see also, Blaylock v. Hynes, supra at 1187. "A case may not be removed on the basis of a federal defense, such as preemption, even if the defense is anticipated in the complaint and both parties concede that it is the only question at issue." Id.; citing Franchise Tax Bd. of Cal. v. Construction Laborers Vacation

Trust, 463 U.S. 1, 12 (1983); see also Magee v. Exxon Corp., supra at 601.

"That said, the Supreme Court has recognized a corollary to the well-pleaded complaint rule known as the complete preemption doctrine." Id., citing Caterpillar Inc. v. Williams, supra at 393; see also, Blaylock v. Hynes, supra at 1187 ("[An] exception to the well-pleaded complaint rule is the doctrine of complete preemption"). "Under this doctrine, '[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.'" Id. ("The complete preemption doctrine applies only when a federal statute possesses '"extraordinary pre-emptive power," a conclusion courts reach reluctantly,'" quoting Gaming Corp. of America v. Dorsey & Whitney, 88 F.3d 536, 543 (8th Cir. 1996), quoting in turn, Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987)); see also, Blaylock v. Hynes, supra at 1187.

"Removal is proper when Congress clearly manifests its intent to make such causes of action removable." Blaylock v. Hynes, supra at 1188. As the Court in Blaylock noted, "[t]he Supreme Court has extended the doctrine of complete preemption to actions under §502(a) of ERISA, the statute's civil enforcement provision, codified at 29 U.S.C. §1132(a)." Id., citing Metropolitan Life Ins.

Co. v. General Motors Corp., supra at 66; see also, Crews v. General American Life Ins. Co., 274 F.3d 502, 505 (8th Cir. 2001).

"To determine whether state-law claims fall within the scope of the provision, a court must first discern whether the plaintiff is eligible to bring a claim under the section." Id. at 1188. "After standing is established, a court must then determine whether the subject matter of the plaintiff's state law claim falls within the scope of §502(a)." Id. at 1189. "A third factor used in determining whether a state-law claim falls within the scope of §502(a)(1)(B) is whether the state-law claims can be resolved without an interpretation of the plan documents." Id.

B. Legal Analysis. To be completely preempted, Moline's claims must be within the scope of Section 502(a) of ERISA. As mentioned, we must first determine whether Moline has standing, under Section 502(a), to bring an ERISA claim and, then, decide whether the subject matter of Moline's claim falls within the scope of that Section. See Blaylock v. Hynes, supra at 1188.

1. Standing. To have standing under ERISA, a plaintiff must be "'a participant, beneficiary or fiduciary.'" Kahler Corp. v. John Hancock Mutual Life Ins. Co., 1989 WL 119176 at *5 (D. Minn., October 2, 1989), quoting Section 502(a). Generally,

employers do not have standing to bring ERISA claims. Id..[3] However, where the plaintiff/employer is closely held, and where the shareholders are also beneficiaries, in their individual capacities, of the benefit plan, the employer may be deemed to have standing. See, Prudential Ins. Co. v. Doe, 76 F.3d 206, 208 (8th Cir. 1996)(reversing the District Court's determination that "Doe" was an employer and, therefore, did not fit into any of the categories of standing set forth in ERISA), citing Robinson v. Linomaz, 58 F.3d 365, 369-70 (8th Cir. 1995). However, when an employer seeks to enforce the terms of a Purchase Agreement, the employer

[3]"Courts which have considered the propriety of [ERISA suits by employers] have spilt." Kahler Corp. v. John Hancock Mutual Life Ins. Co., 1989 WL 119176 at *5 (D. Minn., October 2, 1989). "Some courts, those of the Ninth Circuit in particular, have granted standing to employers and accepted subject matter jurisdiction pursuant to ERISA." Id., citing, among others, Award Service, Inc. v. Northern Cal. Retail Clerks Unions and Food Employers Joint Pension Trust Fund, 763 F.2d 1066, 1068 (9th Cir. 1985). "The majority of Courts, however, have rejected the concept of an employer's ERISA suit." Id. ("These courts have reasoned that federal courts should not engraft a remedy or a statute, no matter how salutory, that Congress did not intend to provide")[internal quotations and citations omitted]. The Court, in Kahler, held that "[t]he Eighth Circuit has not ruled on this question, but it appears to this Court that the majority rule is the better reasoned." Id. Moreover, "[i]n the absence of Eighth Circuit precedent, the court follows the majority rule." Anoka Orthopaedic Associates, P.A. v. Cooley, 773 F. Supp. 158, 162 (D. Minn. 1991) (finding that the employer was not a fiduciary and, therefore, a sufficient basis for the Court to exercise subject matter jurisdiction over the employer's claims was lacking).

does not have standing, under ERISA, to do so. See, Hahn Acquisition Corp. v. Hahn, 137 F. Supp.2d 895, 897 (E.D. Mich. 2001).

In addition, Pillsbury argues that assignees of individuals, who have standing to bring claims for benefits under ERISA, also have standing under ERISA, citing Lutheran Med. Center of Omaha v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan, 25 F.3d 616, 619-20 (8th Cir. 1994). It is unclear, however, whether the holding, in Lutheran Med. Center, extends to assignees beyond health care providers who are seeking recovery for care provided to beneficiaries of ERISA plans, given the Court's reasoning that, "[d]enying standing to health care providers as assignees of beneficiaries may undermine the goal of ERISA, namely to improve benefit coverage for employees." Id. Even more uncertain is whether the holding, in Lutheran Med. Center, applies to employers, see, Hahn Acquisition Corp. v. Hahn, supra at 897, since each of the assignee standing cases, which have been relied upon by Pillsbury, involve health care providers who were seeking recoupment for care rendered. See, Lutheran Med. Center of Omaha v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan, supra at 619-20; Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1277-78 (6th Cir. 1991); Misic v. Building Serv. Employees Heath & Welfare Trust, 789 F.2d 1374, 1378-79 (9th Cir. 1986);

Coonce v. Aetna Life Ins. Co., 777 F. Supp. 759, 772 (W.D. Mo. 1991).

Moreover, ERISA expressly provides that pension plan benefits are non-assignable. See, Davidowitz, D.D.S. v. Delta Dental Plan of Cali., 946 F.2d 1476, 1477 (9th Cir. 1991). Moreover, even if Moline were an assignee of its employee's right to sue, through an intent to subrogate as Pillsbury argues, "[a]n assignment is not valid and enforceable if the plan contains an anti-assignment provision." DeBartolo v. Blue Cross/Blue Shield of Ill., 2001 WL 1403012 (N.D. Ill., November 9, 2001), citing Davidowitz v. Delta Dental Plan of California, 946 F.2d 1476 (9th Cir. 1991); Washington Hosp. Ctr. Corp. v. Group Hospitalization and Med. Serv., 758 F. Supp. 750 (D.D.C. 1991); Parkside Lutheran Hosp. v. R.J. Zeltner & Assoc., Inc., 788 F. Supp. 1002 (N.D. Ill. 1992); Neurological Res., P.C. v. Anthem Ins. Co., 61 F. Supp.2d 840 (S.D. Ind. 1999); Lehigh Valley Hosp. v. UAW Local 259 Soc. Sec. Dep't., Civ. No. A. 98-4116, 1999 WL 600539, at * 1 (E.D. Pa., August 10, 1999); City of Hope Nat'l Med. Ctr. v. Seguros De Servicios De Salud De Puerto Rico, Inc., 983 F. Supp. 68 (D.P.R. 1997); see also, Lutheran Med. Center of Omaha v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan, supra at 619. Here, the Defendant's Plan contains an anti-assignment provision. See Your Benefits Plan, at

33-34 ("Assignment of Benefits").[3] As a consequence, Pillsbury is

---

[3]Pillsbury's Benefit Plan provides as follows:

> If you want your benefit payment to be made directly to the doctor or hospital, complete the assignment section of the claim form. If the assignment is not completed, the benefit will be made directly to you and you are responsible for reimbursing the medical provider. It is not possible to make assignments for prescription drugs. Reimbursement for drugs will be made directly to you. Under the Plan, you may only assign your right to receive any benefit payable by the Plan; you may not otherwise assign or transfer any right, obligation, or duty you may have under the Plan, and any attempt to do so will be null and void.

See Your Benefits Plan, at 33-34.

The Plan allows beneficiaries to assign their rights to receive benefits, but prohibits all other assignments, including the right to assign causes of action. An assignment of a right to receive benefits is distinct from an assignment of a cause of action. See, Lutheran Med. Center of Omaha v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan, 25 F.3d 616, 619 (8th Cir. 1994). In Lutheran Med. Center, the plan at issue provided as follows:

> No employee shall at any time, either during the life of said Trust, or upon the termination thereof, or upon his withdrawal or severance therefrom, in any manner, have any right to assign his rights of benefits under such Plan or this Trust, or to receive a cash consideration in lieu of such benefits.

Id.

There, the Court held that the anti-assignment clause did not prevent the plaintiff from suing the plan, reasoning that the provision clearly prohibited assignments of "rights of benefits" under the plan, but did not prohibit assignment of causes of action arising after the denial of benefits. Id. In contrast, the provi-
(continued...)

unable to rely on an assignment theory so as to circumvent ERISA's standing requirements and, therefore, we must look to whether Moline, as an employer, has standing under ERISA.

In Prudential Insur. Co. of America v. Doe, supra, the defendant was a partner in a law firm that had a benefit plan covered by ERISA, and his family was also a beneficiary of the plan. Doe's daughter required inpatient hospitalization for mental disorders, and the defendant limited its payments to the first thirty days of hospitalization. The defendant insurer filed a Declaratory Judgment action seeking an interpretation of certain provisions of the employee benefit plan. The District Court dismissed Doe's action because Doe lacked standing to sue under ERISA. Our Court of Appeals reversed, noting that Doe was one of two partner/owners of the law firm, in whose name the benefit plan was entered, and that Doe, and his daughter, were beneficiaries of the plan. There, significantly, Doe was being sued, and not his law firm, and the

---

[3](...continued) sion in Pillsbury's Plan prohibits assignments of causes of action and, therefore, Moline cannot be an assignee under the Plan. Moreover, the Plan only allows assignment to health care providers, which Moline is not, and the Plan provides the exclusive means by which to effect an assignment -- by completing the assignment section of a claim form -- and, therefore, under the Plan, Pillsbury's notion, that Moline was an "intended" assignee, is called into question, as neither Moline, nor Horvath, completed the assignment section of any claim form, or any other written instrument of assignment.

concluded that, as beneficiaries under the plan, Doe and his daughter had standing to sue under ERISA. Id. at 208.

In Robinson v. Linomaz, supra, the plaintiffs, who were sole shareholders of a company with a benefit plan for its employees, filed a suit which challenged the termination of the benefit plan by the plan's health insurer. The plaintiffs filed suit both in their individual capacities, and in the name of the company in which the plaintiffs were the sole shareholders. The Court found that the plaintiffs had standing under ERISA, by concluding that they were "beneficiaries" of the benefit plan. The Court observed that "[a] 'beneficiary' is 'a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.'" Id. at 369, quoting Title 29 U.S.C. §1102(8), and also citing, Peterson v. American Life & Health Ins. Co., 48 F.3d 404, 408 (9th Cir. 1995)(finding that an employer had standing because, "[t]o hold otherwise would create the anomaly of requiring some insureds to pursue benefit claims under state law while requiring others covered by the identical policy to proceed under ERISA").

In contrast, in Hahn Acquisition Corp. v. Hahn, supra, which involved a civil action arising from the defendants' sale of Hahn Elastomer Corporation to the plaintiff, pursuant to a Stock Purchase Agreement, the District Court determined that the plaintiff

could not pursue an ERISA claim because the plaintiff did not bring the action on behalf of the plan, the plaintiff had no standing to bring a claim under ERISA, and ERISA did not preempt the plaintiff's claim for relief under the Stock Purchase Agreement. Id. at 897. There, the Court explained:

> In order to have standing, a plaintiff must allege that it personally suffered some actual or threatened injury. Furthermore, a plaintiff must allege that the personal injury was caused by the defendant's conduct and that it is likely to be redressed by a favorable federal court decision. Here, Plaintiff allegedly suffered an injury in fact because Defendants failed to fully disclose Hahn Elastomer Corporation's liabilities [in benefits], so Plaintiff appears to have standing. Nevertheless, this Court may lack subject matter jurisdiction because there is no federal right of action available to Plaintiff. In Count I of the instant action, a parent corporation is suing the individuals who failed to disclose the liabilities under ERISA of a subsidiary corporation purchased. Plaintiff here is not a participant, beneficiary, or fiduciary under the Plan * * * so according to precedent and the plain language of the statute, Plaintiff does not have a right of action under ERISA.

Id.

Here, Moline is seeking a declaration in the name of the company alone. Don Moline, who is the company's president, is not named as a plaintiff and, therefore, the holdings in Doe, and Robinson, are inapposite. Moreover, Moline's claim is less connected to the actual benefit plan than those claims alleged in Doe and Robinson, as Moline is seeking an interpretation of the Purchase Agreement --

not the benefits plan -- similar to the plaintiff in Hahn. As a result, even though the plaintiffs in Doe, and Robinson, were also employers, in a technical sense, they were not suing solely in their capacity as employers. Rather, Doe and Robinson stand as an exception to the general rule, that employers do not have standing under ERISA -- an exception into which Moline's claim, as pled, does not fit.

Furthermore, the concern that has been expressed in some cases -- namely, that some plaintiffs will be required to bring State law claims, and others to bring Federal ERISA claims -- need not concern us here, for only Moline can bring a State claim challenging the interpretation of the Purchase Agreement, as Moline and Pillsbury, are the only parties to that Agreement. All of the claims, by a plaintiff, including Mr. Moline, which challenge the implementation of Pillsbury's benefit plan, necessarily would be framed as a Federal ERISA action.

As in Hahn, Moline is the purchaser of a company, which is seeking a declaration that the liability it acquired, as a part of that purchase, should properly fall on Pillsbury. Therefore, Moline lacks standing to sue, under ERISA, and therefore, we find that Moline's State law claim is not completely preempted by ERISA. Accordingly, we recommend that Moline's Motion to Remand this action to State Court be granted.

2. The Subject Matter of the Claims. Having found that the Plaintiff lacks standing under ERISA, it is unnecessary for us to determine whether the subject matter of the Plaintiff's claim falls within the scope of §502(a). Nonetheless, in the interest of completeness, we turn to that issue.

ERISA contains a broad preemption provision, which reads as follows:

> Except as provided in subsection (b) of this section [which deals with insurance statute's, and which, therefore, is inapplicable here], the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as they may now or hereafter **relate to** any employee benefit plan.

Richards v. Union Labor Life Ins. Co., 804 F. Supp. 1101, 1102 (D. Minn. 1992), quoting Title 29 U.S.C. §1144(a).

"The Supreme Court has defined '"relate[s] to" a benefit plan "in the normal sense of the phrase, if it has a connection with or reference to such a plan."'" Id. at 1103, quoting Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739 (1985), quoting in turn, Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97 (1983); see also, Howard v. Coventry Health Care, 293 F.3d 442, 446 (8th Cir. 2002)(stating that "claims relate to an employee benefit plan covered by ERISA if it '[1] has a connection with or [2] reference to such a plan'"), quoting California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 324 (1997). "However, '[s]ome state actions may affect employee bene-

fit plans in too tenuous, remote, or peripheral a manner' to be preempted." Id. at 1102 (holding that ERISA did not preempt the plaintiff's professional malpractice claims), quoting Shaw v. Delta Air Lines, Inc., supra at 100 n. 21.

As a consequence, "if the 'essence' of a plaintiff's claim is that he was denied benefits from an ERISA plan, then the action falls within the scope of §502(a)." Blaylock v. Hynes, supra at 1189 ("A court must look beyond the four corners of a plaintiff's pleadings to determine whether plaintiff, through artful pleading, seeks to deny the defendant's right to a federal forum"), citing Hull v. Fallon, 188 F.3d 939, 942 (8th Cir. 1999). In Howard v. Coventry Health Care, supra at 446, quoting Johnston v. Paul Revere Life Ins. Co., 241 F.3d 623, 630 (8th Cir. 2001), our Court of Appeals noted that "a claim relates to an ERISA plan when it 'premises a cause of action on the existence of an ERISA plan.'" "The precise scope of ERISA preemption of state law" however, "has left courts, including the Supreme Court, deeply troubled." Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc., 154 F.3d 812, 822 (8th Cir. 1998).

To be sure, Courts have found that some breach of contract claims are preempted by ERISA. See e.g., Metroplitan Life Ins. Co. v. General Motors Corp., 481 U.S. 58, 63-4 (1987); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 43 (1987); Howard v. Coventry Heath

Care, supra at 446. In cases more on point, however, Courts have refused to find that the plaintiff/employers' claims were preempted by ERISA. See Monarch Cement Co. v. Lone Star Indus., Inc., 982 F.2d 1448, 1452-53 (10th Cir. 1992); Hahn Acquisition Corp. v. Hahn, supra at 897-99.[4]

---

[4]In Bennett v. Soo Line Railroad Co., 35 F.3d 334, 336-37 (8th Cir. 1994), our Court of Appeals deferred a ruling on the issue we now confront. There, the Chicago, Milwaukee, St. Paul and Pacific Railroad Company ("Milwaukee Road") was bought by the Soo Line Railroad Company ("Soo Line"). In connection with the purchase of Milwaukee Road, "Soo Line made various 'undertakings,' or promises, in the Asset Purchase Agreement governing the sale." Bennett v. Soo Line RR Co., supra at 335. "Among other things, Soo Line promised to that 'as of the closing' Soo Line would adopt and 'assume responsibility as sponsor' of Milwaukee Road's pension plan." Id. After the sale, certain Milwaukee Road retirees effectively became Soo Line employees. Id. at 336. Those employees sued Soo Line, arguing that "the Asset Purchase Agreement was part of the Soo Line plan, or a contract to modify the plan, and that Soo Line had breached the terms of the plan." Id. With respect to that argument, the Court noted:

> For the purposes of this appeal, we will accept the Retirees' contention that the Asset Purchase Agreement is part of Soo Line's pension plan. Thus, we need not address the close legal questions presented by this contention, * * * nor need we address the even closer questions presented by the contention that the Asset Purchase Agreement constituted an enforceable contract to modify the Soo Line Plan.

Id. at 336-37 [citations omitted].

No such agreement amongst the parties allays our inquiry on the intriguing issue of preemption that we now confront.

In Met Life, and Pilot Life, cases decided on the same day, the Supreme Court found that ERISA preempted the plaintiffs' State law claims. In both actions, the plaintiffs were employees who had been injured, and who sought the recovery of benefits under their respective ERISA covered benefit plans, by alleging that the defendant insurance companies breached the plaintiffs' benefit plans. See, Metropolitan Life Ins. Co. v. General Motors Corp., supra at 63-4; Pilot Life Ins. Co. v. Dedeaux, supra at 43. Unquestionably, in those decisions, the plaintiffs' claims "relate[d] to" the their own employee benefit plans. Similarly, in Howard v. Coventry Heath Care, supra at 446, our Court of Appeals determined that ERISA preempted the plaintiff's breach of contract claim because, "[r]educing Howard's complaint to its core -- that the ERISA plan entitled her to a particular set of breast implants and [the defendant] failed to provide them -- demonstrates her causes of action for breach of contract and violation of public policy are preempted." Nonetheless, "[w]hile the scope of ERISA preemption may be broad, it is certainly not boundless." Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co., 170 F.3d 985, 990 (10th Cir. 1999), citing Monarch Cement Co. v. Lone Star Indus., Inc., supra at 1452.

In Monarch, the Court considered "whether an agreement entered into between Monarch and a predecessor of Lone Star [the defendant]

was a contract determining employer liability under a retirement plan to be construed under state law, or an agreement which relates to a retirement plan in which state law is superseded by the Employee Retirement Income Security Act." Monarch Cement Co. v. Lone Star Indus., Inc., supra at 1149-50. The Court held that "the agreement [wa]s not related to a retirement plan," explaining as follows:

> In 1979, Marquette Company * * * sold its Des Moines, Iowa cement plant to Monarch. After the sale, Monarch established a new pension plan (Monarch Plan) which mirrored the one previously used by Marquette (Marquette Plan). Lone Star acquired Marquette in 1982 and became its successor-in-interest and administrator/fiduciary of the Marquette Plan. In 1987, Monarch closed the cement plant. [A] dispute[,] centered around whether Section 5 of the Sale Agreement created a pension sharing arrangement between Monarch and Marquette which Lone Star, as Marquette's successor-in-interest, was obligated to honor[,] [arose]. Monarch then initiated this action against Lone Star, seeking a declaratory judgment that Lone Star (as Marquette's successor-in-interest) was liable for a share of shutdown and other benefits proportionate to an employee's years of service with Marquette. The underlying question in this case is which party is responsible for the share of shutdown benefits attributable to an employee's years of service with Marquette. The answer depends on how Section 5 of the Sale Agreement is characterized. If Section 5 sufficiently relates to the Marquette and Monarch Plans, then Monarch's claim is preempted by ERISA. To the contrary, if Section 5 is merely part of a separate state-law contract, then Monarch's claim prevails and state contract law governs

> interpretation of Section 5. The district court, perhaps recognizing the limited utility of case law, focused on the nature and effect of the Sale Agreement. The Court concluded the Sale Agreement was a state law contract, not an employee benefit plan:
>
>> The Sale Agreement affects neither the eligibility of the former Des Moines employees for benefits nor the amounts of any of these benefits, it simply divides up the liability for those pension benefits between the two former employers, making the interpretation and enforcement of the Sale Agreement a matter of a "traditional exercise of state power."
>
> Though Section 5 obviously referred to pension benefits under the Monarch and Marquette Plans, the district court found the provision did not alter the "primary administration" of either plan because the district court only was required to "construe the pension sharing arrangement provisions of the Sale Agreement." Monarch's claim thus was not sufficiently related to an employee benefit plan to require ERISA preemption.

Id. at 1450-53.

Similarly, in Hahn Acquisition Corp. v. Hahn, supra at 897, in addition to finding that the plaintiff, which was a company that purchased another business entity, did not have standing bring an ERISA claim, the Court also concluded that the subject matter of the plaintiff's claim, which arose from a dispute over the interpretation of a Stock Purchase Agreement, did not relate to the benefit plan, even though reference was made to the plan in the

Stock Purchase Agreement. In explaining its holding, the Court stated:

> In Count I of the instant action, a parent corporation is suing the individuals who failed to disclose the liabilities under ERISA of a subsidiary corporation purchased. This court concludes that [the plaintiff's] claim affects the Plan in too tenuous, remote, and peripheral a manner to warrant a finding that [the claim] "relates to" the Plan. Plaintiff's claim in Count I actually is a claim for breach of Section 2.9 of the Stock Purchase Agreement because Defendant allegedly failed to disclose liabilities incurred under ERISA or relating to an ERISA plan within the meaning of 29 U.S.C. §1144(a). In other words, the contractual obligations that are the subject of Count I were created by the Stock Purchase Agreement rather than ERISA. Thus, ERISA does not preempt Plaintiff's breach of fiduciary duty claim in Claim I.

Id. at 897-99.

The same may be said here. Although the existence of the Pillsbury benefit plan may seem to draw this action into the vortex of §502(a), Moline's cause of action is not predicated on the existence of an ERISA plan, but on contractual negotiations which resulted in a contract that transferred the ownership of Moline from Pillsbury to Moline.

We are mindful that, under the Court's analysis, in Howard v. Coventry Health Care, supra at 446, quoting Johnson v. Paul Revere Life Ins. Co., supra at 630, "a claim relates to an ERISA plan when it 'premises a cause of action on the existence of an ERISA plan,'"

but Moline's claim is not premised on the terms of an ERISA plan, at least not in the Howard sense. In Howard, as in Met Life, and Pilot Life, the plaintiffs were all denied benefits that, they argued, were guaranteed to them under the provisions of their respective benefit plans. Here, however, Moline seeks to enforce what it regards to be the benefit of the bargain it struck with Pillsbury -- namely, that Pillsbury bear responsibility for the health retirement benefits of those Pillsbury employees, who became Moline employees, when the subdivision of Pillsbury, where those employees worked, was sold to Moline.

Unlike the circumstances in Howard, Met Life, and Pilot Life, the dispute here is between Moline, and Pillsbury -- neither of whom is a "plan," "employer," "fiduciary," "beneficiary," or any other recognized ERISA entity, as to the other. While, in Howard, Met Life, and Pilot Life, the skirmishes between the parties were confined to an ERISA plan, here the pivotal contractual language does not extend between plan providers, and plan beneficiaries, nor does the contract at issue purport to specify the amount of benefits payable to any plan beneficiary. All that is at stake is who will fund the benefits paid -- Moline or Pillsbury -- and neither will be compelled to do so unless a Court determined that, in what appears to be an arm's length transaction, one or the other agreed to do so, under Minnesota's contract law.

Moreover, the only two decisions which our research has uncovered, and which speak to the issue presented -- Monarch, and Hahn -- both held that the contractual interpretation of an instrument, which transfers the ownership of a business entity, does not lie within the scope of §502(a). As was the case in Monarch, here, the Purchase Agreement is a separate State-law contract that simply allocates liability for the payment of ERISA benefits, between two former employers of the benefit claimants, as to which the Court need only construe the language of the Purchase Agreement to determine what allocation should control. As in Hahn, Moline's claim may have some connection to Pillsbury's benefit plan, but the tie is too tenuous, remote, and peripheral, to displace State law, with ERISA principles, in construing the pertinent provisions of the Purchase Agreement between Pillsbury and Moline. Accordingly, we conclude that subject matter of Moline's State law claims against Pillsbury do not fall within the scope of §502(a), and a remand of this action is recommended. Again, however, we proceed to the final prong of analysis in the interests of completeness.

3. The Necessity of an Interpretation of the Plan Documents. In determining the preemptive effect of ERISA, the Court, in Blaylock v. Hynes, supra at 1188, also considered whether the resolution of the plaintiff's claims required an interpretation of

the plan documents.[5] Here, the relevant portion of the Purchase Agreement -- Section VII -- reads as follows:

> Seller shall also be responsible for payment of retiree health benefits of Moline Employees **as they may be eligible under Seller's plan** for retirees.

[Emphasis supplied].

---

[5]A collateral issue is whether the Purchase Agreement, which was entered between Moline and Pillsbury, constituted a part of a benefit plan, or a modification to a benefit plan. See, Crews v. General American Life Ins. Co., 274 F.3d 502, 505-06 (8th Cir. 2001); Bennett v. Soo Line Railroad Co., 35 F.3d 334, 336-37 (8th Cir. 1994); see also Northwest Airlines, Inc. v. Federal Ins. Co., 32 F.3d 349, 355 (8th Cir. 1994). Here, there is no responsible argument that the Purchase Agreement was intended by either of the contracting parties to be an ERISA plan -- indeed, the Purchase Agreement does not display any of the trappings of an ERISA plan, such as, without being exhaustive, an administrative procedure, or a table of benefits.

In Northwest Airlines, Inc. v. Federal Ins. Co., supra at 355, albeit in dicta, the Court observed that a mere reference to an employee benefit, in an agreement, is insufficient to establish an ERISA benefit plan, citing to Monarch Cement Co. v. Lone Star Indus., Inc., 982 F.2d 1448, 1452-53 (10th Cir. 1992), for the proposition that a "Sale Agreement which referred to pension benefit was a state law contract, not an employee benefit plan." More importantly, we are presented with no showing that the Purchase Agreement, between Moline and Pillsbury, modified any ERISA plan. At best, the Purchase Agreement reflected -- at least from Moline's perspective -- a folding in of additional retirees into Pillsbury's ERISA plan while, in Pillsbury's view, the Agreement did not more than obligate Moline to pay those ERISA benefits. While referencing a benefit plan, we are not presented with any showing that Pillsbury's, or Moline's benefit plans, were altered by the Agreement between them. Nor is there a colorable showing that any future claimant of either Moline's ERISA plan, or Pillsbury's, was a party, or signatory, to that contract.

While, under this language, eligibility for benefits is contingent on Pillsbury's plan, that determination of eligibility is not directly before us. Indeed, when we last considered the matter, we found some support for Pillsbury's position -- that the provisions of Pillsbury's plan were in play, as we were persuaded to stay these proceedings in order to allow Pillsbury to complete its administrative consideration of Horvath's claim. We noted, however, that irrespective of Pillsbury's, or Moline's construction of the Purchase Agreement, a stay of the proceedings was warranted. Moline Machinery Ltd. v. The Pillsbury Co., supra at *5.[6]

Absent from our previous analysis, however, was any contention, by Moline, that our jurisdiction over the action was wanting, and

---

[6]As we explained, in granting the requested stay:

> The fiduciaries of the Plan have not yet been afforded the opportunity to reach a full and final resolve of Horvath's claim, or of any similarly situated claim, and they should be accorded that opportunity. Our decision does little more than extend to Pillsbury an occasion to review Horvath's entitlement to benefits on a principled basis, and without economic regard to the result that is finally reached. We understand that Horvath's health benefits are currently being remitted by Moline and, should Pillsbury ultimately accept responsibility for those benefit payments, we have no reason to believe that Moline would not be fully reimbursed for the advancements it has made on Horvath's behalf.

Moline Machinery Ltd. v. The Pillsbury Co., 2001 WL 1766339 at *5 (D. Minn. 2001).

that a remand was required. Now with the benefit of that argument, we are persuaded that, while any benefits to which Horvath is entitled, may require some attention to Pillsbury's ERISA plan, that issue is peripheral to the core question that is presented here -- does Pillsbury have the contractual obligation to pay retirement health benefits to those former Pillsbury employees who transferred to Moline, by virtue of the Purchase Agreement. If the operative language of the Purchase Agreement is vague, and if parole evidence of contractual intent is required, the provisions of Pillsbury's ERISA plan may have some relevance as indicia of contractual intent, but the issue, nonetheless, is critically focused on what the contracting parties meant by the language contained in the agreement they negotiated. Notably, neither Horvath, nor any other similarly situated retiree from Moline, is a Plaintiff in this action, nor is it clear that any such person would have an interest in this dispute since the contested benefits are being paid by someone, and the issue here is singularly who should ultimately be responsible for those payments. Accordingly, we recommend a remand.

C. The Plaintiff's Motion for Costs and Attorney's Fees. When an action is erroneously removed to Federal Court, and the removal results in a remand to State Court, costs are properly assessed against the removing party. See, In re Iowa Manufacturing Co., 747 F.2d 462, 463 n. 2 (8th Cir. 1984); American United Life

Ins. Co. v. Franklin, 97 F.2d 76 (8th Cir. 1938). Under Title 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Plainly from the language employed in the statute, under Section 1447(c), we have discretion to order the payment of costs and attorney's fees.

Here, we find that removal was sought in good faith, and that the basis for the removal was sufficiently compelling that the Plaintiff did not mount any effort toward remand until late in the pretrial process. While we conclude, and recommend, that remand is warranted under the unique facts of this case, the question appears to be one of first impression in this Circuit, and presents a close question. Accordingly, as an exercise of discretion, we recommend that an award of attorney's fees not be made in this instance, and that Moline's Motion for such fees be denied.[7]

WHEREFORE, It is --

RECOMMENDED:

1. That the Plaintiff's Motion to Remand [Docket No. 45] be granted, and that the Clerk of Court be directed to do so forthwith.

---

[7]Given the recommendation of remand, we are not jurisdictionally empowered to rule on Moline's Motion to Amend, or on the parties' cross-Motions for Summary Judgment, and those Motions are best left to the Minnesota State Courts which unquestionably have subject matter jurisdiction over this contract action.

2. That the Plaintiff's Motion to Amend the Complaint [Docket No. 45] be deferred to the State Court upon remand.

3. That the Plaintiff's informal Motion for Costs and Attorney's Fees be denied.

4. That the parties' cross-Motions for Summary Judgment [Docket Nos. 54 & 59] be deferred to the State Court upon remand.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than March 3, 2003,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall

timely order and file a complete transcript of that Hearing **by no later than March 3, 2003,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.